IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYLER VISCONTI,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BAKERSFIELD; RYAN FLOYD, Badge #875; OFELIO LOPEZ, Badge #896; SGT. MARK GRIMM, Badge #361; ERIC MATLOCK, POLICE CHIEF; ALAN TANDY, CITY MANAGER,<br><br>    Defendants. | Case No. CIV-F-03-6874 TAG<br><br>ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY ADJUDICATION<br><br>(Doc. 33) |

    Pursuant to a notice filed on December 30, 2004, Defendants city of Bakersfield, Officer Ryan Floyd, Officer Ofelio Lopez, Sergeant Mark Grimm, Eric Matlock, and Alan Tandy ("Defendants") move for summary judgment, or in the alternative, partial summary adjudication. (Court Docs. 20-33). Plaintiff Skyler Visconti ("Plaintiff") filed an opposition on January 21, 2005. (Court Docs. 34-35). Defendants filed a reply on January 21, 2005. (Court Doc. 36). The matter came on regularly for hearing on February 7, 2005, before the Honorable Theresa A. Goldner, United States Magistrate Judge, in the United States District Court Courtroom at 1300 18th Street, Bakersfield, CA, 93301.

    Plaintiff appeared by counsel Kathleen Ellis Faulkner, Esq. Defendants appeared telephonically by counsel Jacob J. Rivas, Esq. Having considered the moving, opposition, and reply papers, as well as the arguments of counsel and the Court's file, the Court issues the following order.

1

**FACTUAL BACKGROUND**

**A. Plaintiff's Version of the Facts**

On December 18, 2002, Bakersfield Police Officers Ryan Floyd and Ofelio Lopez, were briefed at the Bakersfield Police Department about the existence of an armed robbery suspect known as the "coffee bandit" located in the downtown Bakersfield area. Officers Floyd and Lopez, working in the same patrol car that day, were given two descriptions of the coffee bandit, described as "White male, mid-late 20's, 6', weight unknown, eyes brn, facial hair unshaven, complexion MED., build MED., clothing bkl (sic) Beanie and Jacket, other info One gold earring in each ear." A second description identified the coffee bandit as "Race: White, Age 20-25, Height 6', Weight 160, Facial Hair Stubble, Complexion Light, Build Thin, Clothing-Gry Beanie, Dark Jacket, Gry T-Shirt, Blue Jeans, Other info- Armed w/small caliber black semi-automatic handgun."

On December 18, 2002, at approximately 6:15 p.m., Plaintiff was walking from the library to the bus station in downtown Bakersfield when Officers Floyd and Lopez of the Bakersfield Police Department detained and arrested him without probable cause. Plaintiff was 5'7", weighed 145 pounds, had a light complexion and blue eyes, and was clean shaven except for a moustache and goatee. Plaintiff did not have pierced ears and did not wear an earring. Plaintiff wore a blue plaid button down collar shirt, light tan pants, and no jacket.

During the stop and arrest, Plaintiff was interrogated, searched, assaulted and battered while handcuffed. Plaintiff was taken to the hospital. He was charged with being under the influence and resisting arrest.

Plaintiff contends that Officer Lopez was with Officer Floyd and participated in Officer Floyd's misconduct, or stood by and did nothing to stop the excessive force, false arrest and filing of a false report. Further, Plaintiff contends that Bakersfield Police Sergeant Mark Grimm approved the arrest and the report filed by Officers Floyd and Lopez, and assisted in filing a false report which resulted in criminal charges against Plaintiff. Plaintiff contends that the officers' illegal acts are a pattern and practice of the Bakersfield Police Department and are further encouraged by the failure of the City of Bakersfield, Chief of Police Eric Matlock and City Manager Alan Tandy to address the

///

misconduct within the Bakersfield Police Department and to make policies to remedy errant and illegal acts by its personnel.

Plaintiff sues for violations of his civil rights under the Fourth and Fourteenth Amendments for the unreasonable search and seizure and seeks damages, including punitive damages against the individual officers. Plaintiff also seeks declaratory and injunctive relief.

**B. Defendants' Version of the Facts**

On December 18, 2002, Officers Floyd and Lopez were advised in a Bakersfield Police Department briefing that an armed robbery suspect known as the coffee bandit might be at large and continuing to engage in unlawful activities. They were given the following physical description of the coffee bandit: "Caucasian; male; mid 20s; walking on foot; located in the downtown area; unshaven with facial hair; six feet in height; 160 pounds in weight; thin build; and light complexion." Officers Floyd and Lopez were patrolling the downtown Bakersfield area on December 18, 2002 and observed Plaintiff, who they believed matched the physical description of the coffee bandit, because Plaintiff was a 23 year old male Caucasian, thin in stature, with a light complexion and a goatee, and was walking hurriedly on foot in downtown Bakersfield.

Officers Floyd and Lopez stopped Plaintiff, and during the course of their contact with him, determined he was not the coffee bandit. However, based on their observations of Plaintiff during the course of their contact with him, they observed him to have bloodshot eyes, an elevated pulse rate, accelerated speech, eyelid tremors, he appeared to be nervous, and he failed a field sobriety test, i.e., the Rhomberg internal clock test. Officers Floyd and Lopez arrested Plaintiff for violation of California Health and Safety Code section 11550 (under the influence of a controlled substance) and California Penal Code section 148 (resisting arrest). During the course of the arrest, Plaintiff sustained a laceration to his nose requiring fourteen stitches. Subsequent to the arrest, Plaintiff was transported by Officers Floyd and Lopez to the Kern Medical Center where he received medical treatment. Plaintiff was thereafter booked in the Kern County Jail and released some time later.

Defendants contend that the actions of the officers (in all aspects of this case, but specifically with regard to their use of force) were reasonable, appropriate and in conformance with Bakersfield

///

Police Department rules and regulations, as well as commonly accepted police procedures. Defendants further contend that none of Plaintiff's constitutional rights, or any other rights, were violated at any time during the incident which allegedly gave rise to this lawsuit.

Defendants contend that the claims asserted with regard to the City of Bakersfield and Police Chief Eric Matlock are baseless because Plaintiff cannot satisfy his burden to establish gross negligence, deliberate indifference, or the maintenance of an official policy or custom resulting in the deprivation of civil rights. In addition, Defendants contend the doctrine of qualified immunity applies to the individual officers.

## ANALYSIS & DISCUSSION

### A.   Summary Judgment Standard

Initially, it is the moving party's burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978). Rule 56(e) requires the party against whom the motion is made to "set forth specific facts showing that there is a genuine issue for trial." Absent such a showing, a properly supported motion for summary judgment may be granted if the court finds it appropriate." Nelson, Robbins, et al v. Louisiana Hydrolec, 854 F.2d 1538, 1545 (9th Cir. 1988).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First National Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968); T.W. Elec. Serv., 809 F.2d at 631. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matasushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. The court must not weigh the evidence and must draw all reasonable inferences in favor of the nonmoving party. See,

4

Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir.1997); Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 112 S.Ct. 2072, 2077 (1992) ("Because this case comes to us on petitioner Kodak's motion for summary judgment, the evidence of respondents is to be believed, and all justifiable inferences are to be drawn in their favor.").

The court, however, has no duty to search the record, *sua sponte*, for some genuine issue of material fact; the court may rely entirely on the evidence of the moving party. Guarino v. Brookfield Township Trustees, 980 F.2d 399, 403 (6th Cir. 1992). If the motion is based on deposition testimony, the court may rely exclusively on portions highlighted by the moving party and need not comb the deposition to discover conflicting testimony. Guarino, 980 F.2d at 403. The court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The opposition must designate and reference specific triable facts. Frito-Lay, Inc. v. Willoughby, 863 F.2d 1029, 1034 (DC Cir. 1988). Inferences drawn from the evidence, however, must be viewed in the light most favorable to the nonmoving party. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 456 (1992).

**B.   Civil Rights Claim**

Plaintiff claims relief under the Civil Rights Act, which provides:

> Every person who, under the color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

42 U.S.C. § 1983 ("section 1983").

To state a section 1983 claim, a plaintiff must plead that: (1) defendants acted under color of state law at the time the complained of act was committed; and (2) defendants deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987).

**C.   Municipal Liability**

The basic rule of municipal liability is "local governing bodies . . . can be sued directly under section 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision

5

officially adopted and promulgated by that body's officers." Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978).  In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Supreme Court set forth the "policy and custom" requirements of municipal liability, holding that municipal liability cannot rest on the actions of the employees under a respondeat superior theory.  "[A] local government may not be sued for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or actions may fairly be said to represent official policy, includes the injury that the government as an entity is responsible under §1983." Monell, 98 S.Ct. at 2038.  Thus, the city cannot be liable for the conduct of the officers solely on the basis of respondeat superior.  Plaintiff must show that their conduct represents city policy.  See Canton v. Harris, 489 U.S. 378 (1989) (inadequate police medical training representing a city policy may serve as basis for section 1983 liability).

For Plaintiff to make a successful claimant under the principles articulated in Canton, he must demonstrate:  (1) an inadequate training program, (2) deliberate indifference by the municipality in training its officers, (3) proximate causation, and (4) a constitutional deprivation occasioned by Plaintiff.  Merritt v. County of Los Angeles, 875 F.3d 765 (9th Cir. 1989); Berry v. Baca, 379 F.3d 764 (9th Cir. 2004).

**1.    Canton – Inadequate Training**

In Canton, the Supreme Court held that deficient training, or in the alternative, a failure to train, may give rise to section 1983 liability, and adopted a "deliberate indifference" standard as the touchstone by which to evaluate municipal liability.  Canton, 489 U.S. at 378.  Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality can a city be liable for such a failure under section 1983.  Canton, 489 U.S. at 389.

Defendants' statement of uncontroverted facts reveals that Officer Floyd's training history consists of graduation from the police academy on December 29, 1999, Peace Officer's Standards and Training ("POST"), and supplemental course work and field training proved by the City of

///

///

6

Bakersfield.[1]  (Court Doc. 21, Fact nos. 1, 2, 3, and 4).  Plaintiff does not dispute these facts, but does dispute that Officer Floyd received training for drug recognition and evaluation.  (Court Doc. 35, Fact no. 4).

Defendants' statement of uncontroverted facts further reveals that Officer Lopez's training history consists of graduation from the police academy on December 21, 2000, POST, and supplemental course work and field training proved by the City of Bakersfield.[2]  (Court Doc. 21, Fact nos. 47, 48, 49, and 50).  Plaintiff does not dispute these facts.  (Court Doc. 35, Fact nos. 47, 48, 49, and 50).

A training program will be deemed adequate if it enables officers to respond properly to the usual and recurring situations with which they must deal.  Merritt v. County of Los Angeles, 875 F.2d 765 (9th Cir. 1989).  It is undisputed that Officers Floyd and Lopez have been trained by the City of Bakersfield in many areas of law enforcement including, but not limited to, arrest control, search and seizure, report writing, use of force and, at least with regard to Officer Lopez, drug recognition evaluation.  (Court Doc. 21, Fact nos. 1, 2, 3, 4, 47, 48, 49, and 50; Court Doc. 35, Fact nos. 1, 2, 3, 4, 47, 48, 49, and 50).  Moreover, Plaintiff's own expert, Roger Clark, testified that Officer Floyd was adequately trained as of the date of the incident giving rise to this lawsuit.  (Court Doc. 20, p. 11; Court Doc. 21, Fact no. 36; Court Doc. 29, Exh. A, p. 162).  Accordingly, with regard to the training of these individual officer defendants, Plaintiff has not, and cannot, provide

///

---

[1] Officer Floyd's Declaration dated December 30, 2004 states: "In addition to the POST Academy and training mandated by the Bakersfield Police Department, I have undergone field training with a supervising officer, which included a myriad of topics, including use and escalation of force, definition of reasonable suspicion, searches, arrest and booking procedures, citizen complaint procedures, dictation procedures, information gathering, field identification, drug recognition evaluation, and under the influence training for heroin/cocaine, methamphetamine, hallucinate, and inhalants. (Court Doc. 31, p. 2).

[2] Officer Lopez's Declaration dated December 23, 2004 states: "In addition to the POST academy, I have undergone periodic training in different areas of the law, as well as supplemental training required by the Bakersfield Police Department. Supplemental training has included arrest and control, use of force, first aid/CPR refresher, officer safety, riot/civil disorder and crowd control training. Field training was comprised of use of force reporting guidelines, and supervisorial responsibility, reasonable suspicion determinations, belligerent citizen handling, search and seizure, arrest procedure, evidence, officer safety, report writing and dictation, first aid, field identification, medical treatment of arrestees, drug recognition evaluation, and under the influence training for cocaine/heroin, methamphetamine, hallucinates, alcohol, and inhalants. (Court Doc. 28, p. 2).

evidence that the City of Bakersfield failed to adequately train Officers Floyd and Lopez.  The training of Officers Floyd and Lopez is not lacking, and, therefore, any constitutional claim based on a theory of inadequate training fails.

### 2. Canton – Custom/Policy of Deliberate Indifference

A practice may be so persistent and widespread that it constitutes a custom or usage having the force of law, even though it has not received formal approval through the body's official decision making channels.  The practice must be so common and well settled as to constitute a custom that fairly represents municipal policy.  Monell, 436 U.S. at 658.  Only a pattern of conduct or a series of acts violative of constitutional rights will raise an inference of municipal policy.  City of Oklahoma v. Tuttle, 471 U.S. 808, 821-822 (1985).  An isolated instance of a wrongdoing by an officer or employee does not constitute a custom or policy.  Id.

Plaintiff argues that the lack of investigation in this case demonstrates a deliberate indifference to the discipline.  (Court Doc. 35, p. 4).  He asserts that the "inaction in this case by internal affairs is indicative of a custom and practice of the Bakersfield Police Department and approved by the Chief of Police and The City Manger."  (Id.).  However, Plaintiff produces no evidence, other than this current alleged single instance, of an ongoing practice, custom or policy.  Moreover, as noted by Defendants, the personnel files of Officers Lopez and Floyd and Sergeant Grimm indicate that, although they have been the subject of citizen complaints, and with the exception of one sustained complaint for Officer Lopez for use of bad language, the allegations contained therein resulted in findings of unfounded, exoneration, or not sustained.  (Court Doc. 21, Fact nos. 27, 28, and 29).  Since an isolated instance of officer wrongdoing does not constitute a custom or policy, and Plaintiff produced only evidence of Plaintiff's complaint to the City of Bakersfield regarding the subject incident itself, Plaintiff's claim of a municipal unconstitutional pattern of conduct must also fail.

### 3. Canton - Causation of Constitutional Deprivation

A defendant's conduct must be the proximate cause of the constitutional deprivation alleged by a plaintiff.  Martinez v. California, 444 U.S. 277 (1980).  The municipal policy must be "the moving force of the constitutional violation" in order to impose municipal liability.  Polk County v.

Dodson, 454 U.S. 312, 326 (1981). A direct causal link between a municipal policy or custom and the alleged constitutional deprivation must be established for liability to attach. A plaintiff must prove that the deliberate indifference of the municipality was the "moving force" behind the injury alleged. Board of County Commissioners of Bryant County v. Brown, 520 U.S. 397 (1997).

The undisputed facts and evidence before the Court establish that Plaintiff has failed to demonstrate the requisite causal relationship between an inadequate training program or a deliberate indifference by the municipality and an alleged constitutional deprivation. Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiff's claim of municipal liability for the failure to investigate and/or discipline.

## D.    Supervisory Liability for Ratification

The Ninth Circuit Court of Appeals requires something more than a mere failure to reprimand in order to establish a municipal policy or ratification. Ukanae v. Hodson, 294 F.Supp.2d 1179 (D. Haw. 2003). Although a single decision by a policymaker may be sufficient to approve a subordinate's decision, ratifying that decision for purposes of section 1983 liability, a plaintiff must show that the decision was the product of a conscious, affirmative choice to ratify the conduct in question. Haugen v. Brosseau, 339 F.3d 857 (9th Cir. 2003). Such a ratification could be tantamount to the announcement or confirmation of a policy for purposes of Monell. Haugen, 339 F.3d at 861. A supervisor may also be held liable under section 1983 if he or she directly participates in a constitutional violation or if a failure to properly supervise or train the offending employees caused a deprivation of a constitutional right. Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001).

Plaintiff has failed to establish any evidence demonstrating that any of the named supervisory defendants made a specific, conscious choice to ratify the alleged unconstitutional conduct of officers Floyd and Lopez. Plaintiff's expert, Roger Clark, testified that there is nothing in this case which indicates that Police Chief Eric Matlock gave a direct order to Internal Affairs to ignore the case, to not look into it or sign off on it. (Court Doc. 29, Exh. A, pp. 177-178). There is no evidence of record reflecting that Police Chief Matlock or City Manager Alan Tandy made a conscious and affirmative choice to ratify the conduct of officers Floyd and Lopez. Accordingly, Defendants Matlock and Tandy cannot be held liable under a theory of ratification.

Plaintiff further asserts that Sergeant Grimm failed to investigate whether Plaintiff was under the influence, how Plaintiff was injured at the scene, and what the actions of the officers were. He contends that this inaction was a conscious affirmative choice to ratify the actions of officers Floyd and Lopez. (Court Doc. 35). As noted above, to be liable under section 1983, a supervisor must participate in a constitutional violation or fail to properly supervise or train the offending employee thereby causing a deprivation of constitutional rights. Plaintiff has failed to present any facts to show that Sergeant Grimm participated in the alleged illegal search or the application of excessive force, and there is no such evidence in the record before the Court. (Court Doc. 20). Thus, Sergeant Grimm cannot be liable under a theory of ratification. Furthermore, Sergeant Grimm is a field sergeant, not a policymaker, and only a policymaker can be held liable under this claim.

Based on the foregoing, Defendants are entitled to judgment as a matter of law regarding Plaintiff's complaint alleging supervisory liability for ratification.

### E.  Failure to Investigate/Discipline by Internal Affairs

Plaintiff contends that Defendants failed to discipline members of the Bakersfield Police Department because inadequate investigations by internal affairs ("IA") led to no findings of wrongdoing by officers of the Bakersfield Police Department.

"[T]he law does not say that every failure to discipline an officer who has shot someone is evidence of a 'whitewash' policy or some other policy of 'sham' investigations. The law does not say that, whenever an investigative group accepts an officer's version over a victim's differing version, this acceptance establishes a policy for which a municipality may be held liable under § 1983." Kanae v. Hodson, 294 F.Supp.2d 1179 (D. Haw. 2003). The law requires "something more." Id.

Plaintiff provides no factual evidence for his contention that the IA performed an insufficient investigation of his claim. Plaintiff's contention appears to be nothing more than a disagreement with the findings and conclusions of the IA. Simply because a plaintiff disagrees with the IA's determination, does not mean that the investigation was improper. Plaintiff provides no evidence to support his claim that the investigation was inadequate. Plaintiff has further failed to proffer

///

evidence of any previous IA investigations that were deemed to have been substandard, or that, upon further review, were so lacking in propriety and form so as to lack any indicia of constitutionality. Plaintiff has failed to provide the "something more," as required by law. Accordingly, Defendants are entitled to judgment as a matter of law regarding Plaintiff's claims with regard to any allegedly sham investigations by the IA.

**F.     Reasonable Suspicion for Initial Detention**

Defendants argue that it is clear from the record that officers Floyd and Lopez possessed the requisite reasonable suspicion to conduct an investigatory stop of Plaintiff. (Court Doc. 20). Plaintiff concedes that there is no issue in this case as to the initial contact by officers Floyd and Lopez with Plaintiff to determine whether Plaintiff was the armed robbery suspect known as the coffee bandit, wanted by the Bakersfield Police Department (Court Doc. 35), and thus make no claim against any of the Defendants arising out of the initial detention of Plaintiff.

**G.     Probable Cause for Arrest**

Defendants next assert that Plaintiff's complaint fails to state a cause of action for false arrest in violation of the Fourteenth Amendment. (Court Doc. 20).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Dubner v. City and County of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001). The showing of probable cause is therefore a defense to a false arrest claim under section 1983, as well as the common law claim for false arrest and false imprisonment under California law. See, California Penal Code § 836(a); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 920 (9th Cir. 2001). Dubner, 266 F.3d at 966 (citation omitted); U.S. v. Hillison, 733 F.2d 692 (9th Cir. 1984). The existence of probable cause is an absolute bar to a false arrest claim under section 1983. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2nd Cir. 1995).

Plaintiff argues that there was no basis for the officers to detain him after he was identified and the officers' inquiry as to whether he was the coffee bandit was satisfied. (Court Doc. 35). Plaintiff contends that the evidence reflects that he was not under the influence of drugs. (Id.). He
///

11

points to a blood sample taken by Officer Floyd and analyzed by the Kern County District Attorney's Crime Lab which found that it did not contain any drugs or narcotics of any kind. (Id.). However, evidence of a plaintiff's subsequent acquittal is not probative on the probable cause determination relating to false arrest claims. Borunda v. Richmond, 885 F.2d 1385 (9th Cir. 1988).

Defendants contend that Plaintiff was thought to have been in violation of California Health & Safety Code § 11550(a), which provides as follows:

> No person shall use, or be under the influence of any controlled substance which is (1) specified in subdivision (b), (c) or (e), or paragraph (1) or subdivision (f) of Section 11054, specified in paragraph (14), (15), (21), (22), or (23) of subdivision (d) or Section 11054, specified in subdivision (b) or (c) of Section 11055, or specified in paragraph (1) or (2) of subdivision (d) or in paragraph (3) of subdivision (e) of Section 11055, or (2) a narcotic drug classified in Schedule III, IV, or V, except when administered by or under the direction of a person licensed by the state to dispense, prescribe, or administer controlled substances . . . .

In People v. Crowder, 79 Cal.App.4th 1365 (2000), the California Court of Appeals held that bloodshot eyes, an elevated pulse, eyelid tremors, and failure of the Rhomberg internal clock test amounted to probable cause to arrest for violation of California Health & Safety Code § 11550. Here, Defendants' list of undisputed facts display that Plaintiff's physical symptoms included, but were not limited to, bloodshot eyes, an elevated pulse rate, accelerated speech, tremors to the eyelids and nervousness. (Court Doc. 21, Fact nos. 13 and 14). As noted by Defendants, although Plaintiff "disputes" Defendants' undisputed facts nos. 13 and 14, Plaintiff provides no contradictory evidence and does not dispute Officer Floyd's observations concerning Plaintiff's physical condition at the time of the arrest; rather, Plaintiff disputes the weight of the evidence supporting Officer Floyd's basis to arrest Plaintiff. (Court Doc. 35, Fact nos. 13 and 14). Officer Floyd's observations of Plaintiff's physical condition at the time of the arrest, led that officer to reasonably believe Plaintiff was under the influence of a controlled substance.

Here, there are no disputed issues of fact as to Plaintiff's physical symptoms, i.e., bloodshot eyes, elevated pulse rate, accelerated speech, tremors to the eyelids and nervousness at the time of the arrest. Considering the evidence in the light most favorable to Plaintiff, and based on the totality of the circumstances, the officers had probable cause to arrest Plaintiff. Defendants are therefore entitled to judgment as a matter of law on Plaintiff's false arrest claim.

///

**H.     Excessive Force**

    **1.     Officers Floyd and Lopez**

Defendants do not allege that they are entitled to summary judgment on Plaintiff's excessive force claims as to Officers Floyd and Lopez. These claims against these individual defendants remain viable in this case.

    **2.     Sergeant Grimm**

The undisputed facts of record reveal that Sergeant Grimm was not present at the scene when the alleged excessive force occurred. (Court Doc. 21, Fact no. 53; Court Doc. 35, Fact no. 53). Accordingly, Sergeant Grimm is entitled to judgment as a matter of law on Plaintiff's excessive force claim.

**I.     Failure to Intercede**

Defendants initially argued that they were entitled to summary judgment on the issue of whether Officer Lopez may be held liable under section 1983 for his failure to intervene to protect Plaintiff. (Court Doc. 20, p. 23). However, at the time of the hearing on the underlying motion, Defendants agreed to withdraw their motion on this issue due to a lack of evidence to establish that there was no genuine issue of material fact on this issue. Thus, Plaintiff's cause of action against Officer Lopez for his alleged failure to intervene remains viable in this case.

**J.     Conspiracy and Malicious Prosecution**

At the time of the hearing on Defendants' motion for summary judgment, Plaintiff agreed to withdraw his causes of action relating to conspiracy and malicious prosecution. Accordingly, Plaintiff's claims for conspiracy and malicious prosecution are dismissed from this action, without prejudice.

## CONCLUSION

Defendants' motion for summary judgment or, in the alternative, partial summary adjudication (Court Doc. 33), is GRANTED IN PART and DENIED IN PART, as follows:

    **1.     Municipal Liability**

The training of Officers Floyd and Lopez is not lacking, and; therefore, any constitutional claim based on a theory of inadequate training fails. Plaintiff's claim of an unconstitutional

custom/policy of deliberate indifference also fails. Accordingly, Defendants are entitled to judgement as a matter of law on Plaintiff's claim of municipal liability.

The Court GRANTS Defendants' motion for summary adjudication as to Plaintiff's claims of municipal liability. Plaintiff's claims for municipal liability are DISMISSED from this action.

### 2. Supervisory Liability for Ratification

Defendants are entitled to judgment as a matter of law regarding Plaintiff's claims alleging supervisory liability for ratification.

The Court GRANTS Defendants' motion for summary adjudication as to Plaintiff's claims of supervisory liability for ratification. Plaintiff's claims for supervisory liability for ratification are DISMISSED from this action.

### 3. Failure to Investigate/Discipline by Internal Affairs

Defendants are entitled to judgment as a matter of law regarding Plaintiff's claims of failure to investigate/discipline by Internal Affairs.

The Court GRANTS Defendants' motion for summary adjudication as to Plaintiff's claims of failure to investigate/discipline. Plaintiff's claims for failure to investigate/discipline are DISMISSED from this action.

### 4. Reasonable Suspicion for Initial Detention

Plaintiff conceded that there is no issue in this case as to the initial detention of Plaintiff by Officers Floyd and Lopez. Plaintiff's claims as to the constitutionality of the initial contact between Plaintiff and Officers Floyd and Lopez are DISMISSED from this action, without prejudice.

### 5. Probable Cause for Arrest

Based on the totality of the circumstances, Officers Floyd and Lopez had probable cause to arrest Plaintiff. Defendants are entitled to judgment as a matter of law on Plaintiff's false arrest claim.

The Court GRANTS Defendants' motion for summary adjudication as to Plaintiff's false arrest claim. Plaintiff's claims for false arrest are DISMISSED from this action.

///

///

### 6. Excessive Force

Sergeant Grimm is entitled to judgment as a matter of law on Plaintiff's excessive force claim. Defendants do not allege that they are entitled to summary judgment on Plaintiff's excessive force claims as to Officers Floyd and Lopez.

The Court GRANTS Defendants' motion for summary adjudication as to Plaintiff's excessive force claim against Defendant Sgt. Mark Grimm, and such claim is DISMISSED from this action. However, excessive force claims against Officers Floyd and Lopez remain viable in this case.

### 7. Failure to Intercede

Defendants withdrew their motion on this issue due to a lack of evidence. Accordingly, Defendants' motion for summary adjudication as to Plaintiff's failure to intercede claim is DENIED. Plaintiff's cause of action against Officer Lopez for his alleged failure to intercede remains viable.

### 8. Conspiracy and Malicious Prosecution

Plaintiff withdrew his causes of action relating to conspiracy and malicious prosecution. Plaintiff's claims for conspiracy and malicious prosecution are DISMISSED from this action, without prejudice.

IT IS SO ORDERED.

**Dated:   April 18, 2005**          **/s/ Theresa A. Goldner**
j6eb3d                                    UNITED STATES MAGISTRATE JUDGE